UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARY OLIVER-BENOIT & OLIVETREE CLEANING SYSTEMS LLC,<br><br>*Plaintiffs*,<br><br>*v.*<br><br>ATALIAN GLOBAL SERVICES,<br><br>*Defendant*. | Civil No. 3:21-cv-01670 (JBA)<br><br>January 4, 2022 |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

Plaintiff Mary Oliver-Benoit is the owner of Plaintiff Olivetree Cleaning Systems LLC ("Olivetree"). Olivetree contracted with Defendant Atalian Global Services to provide cleaning services. Plaintiffs' Complaint [Doc. # 1] alleges that Defendant breached its contract with Olivetree, discriminated against Plaintiffs on the basis of race, and retaliated against Plaintiffs for complaining of racial discrimination. Plaintiffs allege that Defendant's actions violated Title VII (Count One), 42 U.S.C. §1981 (Count Two), and the Connecticut Fair Employment Practices Act ("CFEPA") (Count Three); breached the parties' contract (Count Four) and the implied covenant of good faith and fair dealing (Count Five); and intentionally inflicted emotional distress (Count Six).

Defendant moves to dismiss Counts One, Two, Three, Five, and Six.[1] [Doc. # 17]. For the reasons given below, the Court GRANTS Defendant's motion with regard to Count One,

---

[1] Defendant has not moved to dismiss Count Six.

1

Count Two as to Ms. Oliver-Benoit, Count Three, Count Five as to Ms. Oliver-Benoit, and Count Six, and DENIES it with regard to Count Two as to Olivetree and Count Five as to Olivetree.

## I. Background

Ms. Oliver-Benoit is the owner and operator of Olivetree. (Compl. ¶ 10.) Ms. Oliver-Benoit and the majority of her employees are Black. (*Id.* ¶ 11.) In 2019, Olivetree and Defendant entered into a three-year contract for Olivetree to provide cleaning services for Defendant in various buildings. (*Id.* ¶ 15.) The contract stated that if Defendant was not satisfied with Olivetree's services at a particular site, Defendant could notify Olivetree, which would then have ten days to address the complaints, after which, if the complaints were not addressed, Defendant could give five days' notice to Olivetree that it was terminating its services from that site. (*Id.* ¶ 16.)

Plaintiffs allege that Defendant's employees engaged in a wide range of discriminatory conduct towards Ms. Oliver-Benoit and other Olivetree employees, including its white employees refusing to speak to Black Olivetree employees, one of its white employees ordering Ms. Oliver-Benoit and her husband, who is also Black, to leave Defendant's offices so that they would not be seen by one of Defendant's executives, reprimanding Ms. Oliver-Benoit in front of her staff, demanding that Olivetree fire a Black employee because she "walked too slowly" and claiming to find a fingerprint on a glass, and removing work from Olivetree in violation of the contract's notice requirement. (*Id.* ¶¶ 21-27, 29.) Plaintiffs complained about this discriminatory conduct to Defendant on a number of occasions, including a written complaint dated March 2020. (*Id.* ¶ 27.) Plaintiffs allege that

in retaliation for this complaint, Defendant took away all of Plaintiffs' remaining work, in further violation of the contract's notice requirement. (*Id.* ¶ 29.)

Plaintiffs allege that as a result of Defendant's actions, they have suffered the loss of rights, economic losses, loss of contracted for benefits, loss of employment opportunities, reputational harm, and emotional harm. (*Id.* ¶ 36.)

## II. Standard

Defendant has moved to dismiss under Rule 12(b)(6). "To survive a [12(b)(6) motion to dismiss for failure to state claim], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sarmiento v. United States*, 678 F.3d 147, 152 (2d Cir. 2012).[2] To be facially plausible, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, the complaint must be interpreted liberally, all allegations must be accepted as true, and all inferences must be made in the plaintiff's favor. *Heller v. Consol. Rail Corp.*, 331 F. App'x 766, 767 (2d Cir. 2009). If a complaint only "offers labels and conclusions" or "naked assertions devoid of further factual enhancement," it will not survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. Discussion

### A. § 1981 (Count Two)

Section 1981 "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship," including employment.

---

[2] Unless otherwise indicated, internal citations, quotation marks, and other alterations are omitted throughout in text quoted from court decisions.

*Patterson v. Cnty. of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004). Defendant argues that Ms. Oliver-Benoit cannot make out a 42 U.S.C. § 1981 claim because she is not a party to the contract between Olivetree and Defendant. (Def.'s Mem. [Doc. #19] at 10-11.) Plaintiffs argue that because § 1981 applies to independent contractors and Ms. Oliver-Benoit is the owner of Olivetree, she should be considered a party to the contract. (Pls.' Opp'n [Doc. # 23] at 10-13.) The Court disagrees.

The argument that Ms. Oliver-Benoit is an independent contractor is misplaced. *Danco Inc. v. Wal-Mart Stores, Inc.*, 178 F.3d 8 (1st Cir. 1999), is instructive on this point. *Danco* recognized that independent contractors, including corporate entities, can bring § 1981 claims, but explicitly stated that § 1981 does not extend to someone who is "merely affiliated—as an owner or employee—with a contracting party that is discriminated against by the company that made the contract." *Id.* at 14. For this reason, Danco, the company that had contracted with the defendant, had a potential § 1981 claim, but the individual who owned Danco did not. *Id*. This is precisely the situation that Ms. Oliver-Benoit is in; she alleges no direct contract between herself and Defendant. Additionally, in *Domino's Pizza, Inc.*, the Supreme Court held that "a plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes to make and enforce" and "it is fundamental corporation and agency law—indeed, it can be said to be the whole purpose of corporation and agency law—that the shareholder and contracting officer of a corporation has no rights and is exposed to no liability under the corporation's contracts." 546 U.S. 470, 475, 479-80 (2006). As the owner of Olivetree, Ms. Oliver-Benoit has no rights to assert under the contract between Defendant and Olivetree. Therefore, the Court dismisses this claim with regard to Ms. Oliver-Benoit.

### B. Title VII (Count One) and CFEPA (Count Three)

Defendant argues that Plaintiffs have no claims under either Title VII and CFEPA because no employment relationship between Plaintiffs and Defendant is claimed. (Def.'s Mem. at 5-6.) At oral argument, Plaintiffs consented to the dismissal of the claim as to Olivetree because it has no employment relationship with Defendant. Plaintiffs also consented to the dismissal of the claim as to Ms. Oliver-Benoit if the Court found that she is not an independent contractor for Defendant. Having so found, the Court will dismiss these claims.

### C. Implied Covenant of Good Faith and Fair Dealing (Count Five)

Defendant seeks dismissal of the claim for violation of the implied covenant of bad faith and fair dealing, claiming Plaintiffs' allegations do not plausibly support an inference of bad faith. (Def.'s Mem. at 8.) Plaintiffs point to their allegations that Defendant's conduct was motivated by discriminatory and retaliatory intent as sufficiently implying bad faith.[3] (*Id.* at 18-19.)

"To constitute a breach of the implied covenant of good faith and fair dealing, the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith." *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 433 (Conn. 2004). "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister

---

[3] Plaintiff consents to the dismissal of this claim as to Ms. Oliver-Benoit, in light of the Court's determination that Ms. Oliver-Benoit was not a party to the contract between Olivetree and Defendant.

motive. . . . Bad faith means more than mere negligence; it involves a dishonest purpose." *Habetz v. Condon*, 224 Conn. 231, 237 (Conn. 1992).

Defendant frames Plaintiffs' complaint as alleging only "that Atalian treated Olivetree's employees less well than its employees and terminated the contract without giving advance notice." (Def.'s Mem. at 8.) However, Defendant underestimates the import of both Plaintiffs' allegations of persistent racial discrimination by Defendant's employees, including refusing to speak to Black employees of Olivetree, harassing Ms. Oliver-Benoit, instructing her and her husband to leave the building to avoid being seen by a white executive, removing work from Olivetree in retaliation for complaining about racial discrimination, and breaching the contract requirements in taking work from Olivetree. (Compl. ¶¶ 16, 22-30.) These allegations plausibly allege both a failure to fulfill a contractual duty and a sinister motive in doing so—racial discrimination and retaliation.

These circumstances contrast with instances where courts have found no breach of the covenant of good faith and fair dealing. For example, in *De La Concha*, the Connecticut Supreme Court upheld the trial court's rejection of the plaintiff's bad faith claim because the defendant's actions were motivated by a reasonable business strategy and were consistent with the terms of the lease. 269 Conn. at 240-241. *See also Miller Auto. Corp. v. Jaguar Land Rover N.A., L.L.C.*, No. 3:09–CV–1291, 2010 WL 3260028, *7 (D. Conn. August 12, 2010) (explaining that without additional allegations of improper motive, "altering business plans—especially when the right to do so is reserved by contract to the party who alters them—is not an action done in bad faith").

Defendant's argument that Plaintiffs' claim should be dismissed as duplicative of Plaintiffs' § 1981 claim is no more persuasive. Connecticut courts have held in the

6

employment context that the covenant of good faith and fair dealing is limited to at-will employment contracts, and employees must allege that their dismissal violated an important public policy. *McKinstry v. Sheriden Woods Health Care Ctr., Inc.*, 994 F. Supp. 2d at 267. This principle has been further extended "to preclude claims for breach of the covenant of good faith and fair dealing where there are adequate statutory remedies through which the alleged public policy violations can be enforced." *Leichter v. Lebanon Bd. Of Educ.*, 917 F. Supp. 2d 177, 194-95 (D. Conn. 2013). However, this public policy exception to covenant of good faith and fair dealing claims has not been applied outside the employment context. As Olivetree is not alleging wrongful termination of any at-will employment contract, the availability of other statutory remedies is irrelevant.

### D. Intentional Infliction of Emotional Distress (Count Six)

Defendant argues that Plaintiffs' allegations cannot plausibly support an inference of extreme and outrageous conduct against Ms. Oliver-Benoit.[4] In response, Plaintiffs argue that repeated acts of racial discrimination and retaliation by Defendant, taken together, demonstrate extreme and outrageous conduct. (Pls.' Opp'n at 19-24.)

To state a claim for intentional infliction of emotional distress, a plaintiff must show that "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton*

---

[4] Plaintiffs agree to the dismissal of this claim as to Olivetree. *See Fed. Deposit Ins. Corp. v. Hulsey*, 22 F.3d 1472, 1489 (10th Cir. 1994) ("Since a corporation lacks the cognizant ability to experience emotions, a corporation cannot suffer emotional distress. Thus, no claim for intentional infliction of emotional distress lies.").

7

*v. Bd. of Educ. of the Town of Stonington*, 254 Conn. 205, 210 (Conn. 2000). Conduct is extreme and outrageous if it "exceeds all bounds usually tolerated by decent society" and is "of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *Huff v. West Haven Bd. Of Educ.*, 10 F. Supp. 2d 117, 122 (D. Conn. 1998). Motive does not bear on whether an act was outrageous; "it is the act itself which must be outrageous." *Id.* at 123. Thus, illegal discriminatory conduct "does not *per se* give rise to a claim for intentional infliction of emotional distress." *Allen v. Egan*, 303 F. Supp. 2d 71, 78 (D. Conn. 2004).

"Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. Only where reasonable minds disagree does it become an issue for the jury." *Appleton*, 254 Conn. at 210. Here, even drawing all inferences in favor of Plaintiffs, the Court cannot infer that Defendant's conduct rises to the level of extreme and outrageous. Disregarding Defendant's alleged motives, Plaintiffs have alleged that they were treated in a racially demeaning, disrespectful and retaliatory manner, instructed to fire an employee, forced to limit their interactions with certain employees of Defendant, and pretextually denied work. (Compl. ¶¶ 21-27, 29.) Though offensive, these allegations are insufficient to support a claim of extreme or outrageous conduct. For example, in *Lorenzi v. Conn. Judicial Branch*, 620 F. Supp. 2d 348, 353 (D. Conn. 2009), allegations of conduct that included demeaning treatment, denial of career advancement, limitations on interactions with other employees, discrimination, and retaliation for discrimination were insufficient to find that conduct was extreme and outrageous.

Plaintiffs' allegations are also distinguishable from cases where defendants' conduct has been found to be extreme and outrageous. In one of the few cases where a court has found that workplace conduct could be extreme and outrageous, *Craig v. Yale Univ. Sch. Of Med.*, 838 F. Supp. 2d 4, 11-12 (D. Conn. 2011), the court's decision relied heavily on the fact that the defendants had significant control over the plaintiff's ability to pursue his chosen career at all, and thus was not a typical workplace relationship, a "plus" factor not present here. Similarly, when courts have found racial discrimination to be extreme and outrageous, the alleged conduct has involved racial slurs and displays of racist symbols. *See Bakhit v. Safety Markings, Inc.*, 33 F. Supp. 3d 99, 104-105 (D. Conn. 2014) (finding that plaintiffs' allegations of repeated racist slurs and threats plausibly stated a claim for intentional infliction of emotional distress and collecting cases). Such additional factors have not been alleged here.

### IV.     Conclusion

For the reasons discussed above, the Court GRANTS Defendant's motion as to Counts One, Three, and Six in their entirety and Counts Two and Five as to Ms. Oliver-Benoit. Accordingly, the counts that remain are Counts Two, Four, and Five as to Olivetree.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 4th day of January, 2022

9